UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ROBERT FERRANTE,                )
                                )
        Plaintiff                )
                                )
v.                              )    Civil No. 09-525-P-S
                                )
MICHAEL J. ASTRUE,              )
Commissioner of Social Security, )
                                )
        Defendant                )

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises several questions: whether the administrative law judge erred in evaluating the report of an examining physician; whether she correctly assessed the side effects of certain medications; whether she failed to address an expert assessment of the plaintiff's mental limitations; whether she properly determined the impact of a particular impairment; whether she complied with 20 C.F.R. § 404.1545(e); and whether she improperly determined that the plaintiff could perform the job of cashier II. In addition, the plaintiff asks this court to "reconsider and withdraw" its decision in *Prescott v. Astrue*, No. 09-23-B-W, 2009 WL 3148731 (D. Me. Sept. 30, 2009), *aff'd* Nov. 5, 2009. Plaintiff's Itemized Statement of Errors ("Itemized Statement") (Docket No. 12) at 13. I recommend that the court affirm the commissioner's decision and decline to withdraw its earlier decision.

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by the court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at

1

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 415.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff remained insured for purposes of SSD through September 30, 2008, Finding 1, Record at 14; that he suffered from the following impairments: mild degenerative changes of the right knee, very mild degenerative changes of the left knee, degenerative disc disease and degenerative arthritis of the cervical spine (since January 2007), obesity, and lateral epicondylitis of the right elbow, impairments that were severe but did not, considered singly or in combination, meet or medically equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 4-5, *id.* at 15-29; that he retained the residual functional capacity ("RFC") to lift and/or carry 10 pounds frequently and 20 pounds occasionally, sit, stand, or walk each for two hours at a time and a total of six hours in an eight-hour work day, to operate foot controls and/or pedals occasionally, to climb stairs and ramps occasionally, and to stoop, kneel, crouch, and crawl occasionally, but had to avoid climbing ladders, ropes, and scaffolds, avoid unprotected heights, and avoid constant handling and fingering, and was limited to fixed positioning of his head or neck for up to one hour before requiring a break from that position for 15 to 20 minutes and to the performance of routine, repetitive tasks, Finding 6, *id.* at 32; that he was unable to perform any past relevant work, Finding 7, *id.* at 37; that, given his age (a younger individual on August 14, 2003, the initial determination denial date), at least a high school education, work experience, and RFC, use of the Medical-Vocational Rules of Appendix 2 to 20 C.F.R. Part 404, Subpart P (the "Grid") as a framework for decision-making supported a finding that there were jobs existing in significant numbers in the national economy that the plaintiff could perform, Findings 8-11, *id.* at 38; and that the plaintiff had, therefore, not been under a

disability, as that term is defined in the Social Security Act, at any time from August 14, 2003, through the date of the decision, May 22, 2009, Finding 12, *id*. at 39. The Decision Review Board did not complete its review of the administrative law judge's decision within the time allowed, *id*. at 1, making it the final determination of the commissioner. 20 C.F.R. § 405.420(a).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's appeal also implicates Step 2 of the sequential process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs*., 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the

individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

The plaintiff also alleges an error at Step 3 of the sequential process, at which stage a claimant bears the burden of proving that his or her impairment or combination of impairments meets or equals the Listings. 20 C.F.R. §§ 404.1520(d), 416.920(d); *Dudley v. Secretary of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). To meet a listed impairment, the claimant's medical findings (*i.e.*, symptoms, signs, and laboratory findings) must match those described in the listing for that impairment. 20 C.F.R. §§ 404.1525(a), 404.1528, 416.925(d), 416.928. To equal a listing, the claimant's medical findings must be "at least equal in severity and duration to the listed findings." 20 C.F.R. §§ 404.1526(a), 416.926(a). Determinations of equivalence must be based on medical evidence only and must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1526(b), 416.926(b).

## I. Discussion

### A. Dr. Graf's Report

The plaintiff was examined at the request of his attorney by Frank A. Graf, M.D., an orthopedic surgeon, whose report to the attorney is dated February 18, 2009. Record at 599. He now complains that the administrative law judge wrongfully rejected Dr. Graf's "assessment." Plaintiff's Itemized Statement of Errors ("Itemized Statement") (Docket No. 12) at 3. He contends that the administrative law judge "inappropriately interjected herself into the province of experts" and ignored "critical medical records" in doing so, inexplicably "cho[o]s[ing] not to send [the plaintiff] out for an orthopedic or neurologic consultative examination and instead rel[ying] upon her own medical views[.]" *Id.* at 4.

After reviewing much of the medical evidence in the file and reciting Dr. Graf's findings, Record at 15-19, the administrative law judge reached the following conclusion with respect to Dr. Graf's report:

> Dr. Graf appears to have diagnosed a *herniated intervertebral disc* at the lumbosacral spine on the basis of (1) the claimant's subjective pain reaction (in particular his complaint of central low back pain, extending into the right buttock) on performance of the sitting and supine straight leg raising tests, (2) spinal range of motion deficits and (3) the claimant's subjective complaints of pain on palpation of the lumbosacral disc interspace. In the judgment of the undersigned this evidence, which is almost wholly subjective, is insufficient to support the diagnosis, especially in light of the fact that the most recent imaging studies demonstrate only minimal lumbosacral disc space narrowing, associated with mild degenerative joint disease.

*Id.* at 19 (emphasis in original).

The "most recent imaging studies" to which the administrative law judge apparently refers are those reviewed at the Veterans Administration Center in November 2008, which record a review of "[the plaintiff's] most recent lumbar spine imaging studies [that were] said to show *minimal lumbosacral disc space narrowing, associated with mild degenerative joint disease.*" *Id.* at 18-19 (emphasis in original); *see also* Record at 609. The plaintiff asserts that the administrative law judge could only reject Dr. Graf's diagnosis if the record also contains "a definitive opinion to the contrary." Itemized Statement at 6. He cites no authority for this argument, and it is not a correct statement of Social Security law. Here, the administrative law judge cited medical evidence to support her rejection of Dr. Graf's conclusion; nothing further is required.[2] *See, e.g., Moore v. Astrue*, No. 06-136-B-W, 2007 WL 2021919, at *5-*6 (D. Me.

---

[2] The plaintiff relies on a 1993 CT scan. Itemized Statement at 6. The administrative law judge was entitled to rely on more recent medical imaging. In the itemized statement, Itemized Statement at 4, 6, and at oral argument, counsel for the plaintiff asserted that the 1993 CT scan was "more definitive" than the 2008 x-ray that was interpreted by a medical professional at a Veterans Administration hospital. Counsel cited a website to support this assertion. Itemized Statement at 6 n.4. Even if that could be assumed to be an authoritative source, the plaintiff has offered no medical evidence to the effect that a herniated disc diagnosed in 1993 would continue to cause the plaintiff's symptoms 15 years later, nor does he assert that the VA physician who diagnosed him with chronic

5

July 11, 2007); *Morton v. Barnhart*, No. 05-82-P-S, 2005 WL 3263933, at *5 (D. Me. Nov. 30, 2005). In addition, a plaintiff's subjective reports are insufficient to establish the existence of an impairment. *Madden v. Barnhart*, No. 05-150-B-W, 2006 WL 1554600, at *2 (D. Me. June 1, 2006); 20 C.F.R. §§ 404.1529(a), 416.929(a).

The plaintiff next contends that the administrative law judge "erroneously found that [the plaintiff's] lumbar spinal disorder was nonsevere" because "[h]er conclusion is directly contradicted by the medical record." Itemized Statement at 5. The "direct contradiction" apparently is supplied by a spinal CT scan showing "a right lateral *disc herniation* into the inferior aspect of [] the right neural foramen at the *lumbosacral level of the spine*[,]" which the administrative law judge "acknowledged." *Id.* (emphasis in original). The CT scan mentioned by the administrative law judge, Record at 16, was taken in 1993, long before the alleged onset date of February 1, 2003, *id*. at 12. To interpret this CT scan as establishing the existence of a severe lumbar spinal disorder seven years later would be to interpret raw medical data, a task that is forbidden to the administrative law judge and one in which this court certainly will not indulge. And, again, the administrative law judge was entitled to rely on later medical reports that found only mild degenerative disease in the lumbosacral area.[3]

Finally, the plaintiff argues in conclusory fashion, Itemized Statement at 7, that the administrative law judge was required to adopt Dr. Graf's conclusion that he met Listing 1.04, *id*. at 603, and fatally failed to include Dr. Graf's limitations in her analysis of the plaintiff's RFC. First, of course, an administrative law judge is never required to adopt the conclusion of

---

lumbosacral strain in 2008 had been made aware of the 1993 CT scan, which had been taken at the same VA facility. It is the plaintiff's evidentiary burden to make these connections, particularly where, as here, he was referred by his lawyer to an orthopedic surgeon for evaluation. Record at 599-600.

[3] The administrative law judge's reliance on the Veterans' Administration physician's report thus makes it unnecessary to consider her reliance on the opinion of a state-agency reviewing surgeon, Record at 398-406, which the plaintiff attacks at some length in this regard, Itemized Statement at 6-8.

any medical source that a claimant is disabled, 20 C.F.R. § 404.1527(e), 416.927(e), which is the practical effect of a finding at Step 3 that the claimant's impairment meets the terms of a Listing. Second, and more important, I have already determined for the reasons set forth above that the administrative law judge was entitled to reject Dr. Graf's opinion and gave adequate reasons for doing so. Accordingly, there was no error in failing to find that the plaintiff's lumbosacral impairment was severe.

While it is true that an administrative law judge must include the limitations caused even by nonsevere impairments in his or her consideration of a claimant's RFC, here the plaintiff relies, to the extent that this argument is properly raised with sufficient amplification, on the "limitations as set forth by Dr. Graf based upon inclusion of a severe problem in the low back." Itemized Statement at 8. If the plaintiff proffers nothing other than the limitations set by Dr. Graf, based on his conclusion that a severe problem in the low back existed, then there are no identified limitations caused by any problem in the low back that the administrative law judge could have considered in connection with her determination of the plaintiff's RFC.

### B. Medication Side Effects

Next, the plaintiff contends that the administrative law judge "made her own, unsupported, assessment of the impact of the side effects of his medication upon his residual functional capacity[,]" and failed to accept his own statements about those side effects. *Id.* He asserts that there is no positive evidence in the record "to support [the administrative law judge's] assumptions on this issue." *Id.* He also concludes that the administrative law judge "invade[d] the province of experts" in this regard by "mak[ing] up her own medical assessment of a claimant's limitations." *Id.* at 9.

Specifically, the plaintiff asserts that the administrative law judge "assumed that the only limiting effect [of the plaintiff's medications] was to reduce his mental function to a level allowing only the performance of routine, repetitive tasks." *Id*. at 8. The administrative law judge's opinion says that "[a]lthough the claimant's counsel urged that . . . certain adverse mediation side effects would preclude the performance of [the] job, . . . [h]is adverse medication side effects are addressed by the residual functional capacity assessment set out above." Record at 38-39. In that earlier section of her opinion, the administrative law judge said:

> The claimant alleges severe memory deficits (Exhibit 4E), in part caused by his medications (Exhibits 6E and 3E). When his memory was actually tested by Dr. Whelan (Exhibit 30F), it appeared to be within normal limits. . . . After Dr. Muncie evaluated him in May, 2007 (Exhibit 5F), he reported that "Informal cognitive assessment that examined his . . . working memory abilities . . . revealed no impairments[.] . . ." There is little in the record to support the claimant's allegations regarding memory deficits, and such deficits are demonstrably not present.
>
> At one point the claimant was willing to indicate that some pain medications provided him with a little relief, but he was *unwilling* to say what the medications were (Exhibit 6E). He also said that certain medications caused adverse medication side effects (*mood swings* and *memory loss*), but he was *unwilling* to identify the medications that cause these side effects (Exhibit 6E). On another occasion he identified the medication causing mood swings and memory loss *to a treatment provider* as being Darvocet, which he also said did not relieve his pain (Exhibit 10F). He has variously said that other medications make him disoriented, somewhat dizzy and drowsy; that although the Veterans Administration Center prescribed pain medication, *he does not take any* (Exhibit 30F); that the Veterans Administration Center would not give him pain medication (Exhibits 2F and 35F); that Vicodin is somewhat effective (Exhibit 43F), but makes him sleepy during the day (Exhibit 39F); that *nothing makes his pain better* (Exhibit 10F); that an occasional ibuprofen is helpful (Exhibits 2F and 35F); that his pain is partially relieved by medications, including opioids and hydrocodone (Exhibit 41F); that Flexeril causes sleepiness (Exhibit 39F) and is somewhat effective (Exhibit 43F); and that he is not interested in participating in a pain clinic (Exhibit 43F). The disparities among the claimant's statements, his unwillingness to provide requested information to the Social Security Administration (Exhibit 6E) and his unwillingness to participate in a pain clinic, while claiming dissatisfaction with his pain

> medications, all diminish his credibility. Nevertheless, the residual functional capacity assessment set out above addresses his claimed adverse pain medication side effects by limiting him to the performance of routine repetitive tasks with avoidance of unprotected heights.

Record at 36-37 (emphasis in original).

Contrary to the plaintiff's assertions, this section of the administrative law judge's opinion sets out in sufficient detail her reasons for rejecting most of the plaintiff's claims of specific side effects arising from prescribed medications, when he was actually taking those medications. Nor is the limitation ascribed to medication side effects by the administrative law judge "unsupported by substantial evidence." Itemized Statement at 4.

In choosing a limitation to the performance of routine repetitive tasks with avoidance of unprotected heights, the administrative law judge was making a common-sense connection between those limitations and the plaintiff's claimed medication side effects that she did not explicitly reject – sleepiness, disorientation, drowsiness. The administrative law judge also tied the limitation to simple repetitive tasks to the plaintiff's activities of daily living, *id.* at 37, another source of support in the record for her conclusions. There is no error in this regard.[4]

### C. Mental Limitations

The plaintiff also asserts, briefly, that the administrative law judge's failure to state what weight she gave to the finding of Dr. Rothstein of a moderate impairment in social functioning, with a corresponding limitation to simple instructions, requires remand. Itemized Statement at 9. This is a reference to the July 30, 2003, evaluation by Dr. Charles Rothstein, a state-agency reviewer. *Id.* at 512-29. Dr. Rothstein's assessment includes a check mark in the "moderate" box with respect to difficulties in maintaining social functioning. *Id.* at 522.

---

[4] At oral argument, counsel for the plaintiff asserted that the RFC assigned to the plaintiff by the administrative law judge differed fatally from the hypothetical question posed to the vocational expert with respect to the side effects of medication. This argument was not raised in the itemized statement and hence is waived, but I note that the limitations included in the hypothetical question, Record at 82-83, and the RFC, *id.* at 32, 37, appear to be the same.

But, the plaintiff ties this moderate impairment only to Dr. Rothstein's "corresponding limitation to simple instructions (R. … 528)." Itemized Statement at 9. The administrative law judge included a limitation to routine, repetitive tasks in the RFC that she assigned to the plaintiff. Record at 32. The plaintiff cites only Social Security Ruling 96-9p as authority for the necessarily-implied assertion underlying his argument: that each particular limitation mentioned by each medical source who evaluates a claimant, whether or not the reviewer actually examines the claimant, must be specifically addressed in the administrative law judge's opinion. That Ruling deals with the implications for an individual's ability to do other work of an RFC for less than a full range of sedentary work, Social Security Ruling 96-9p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2010), at 152. It does not support the broader implied proposition for which the plaintiff cites it.

This alleged error, if indeed it is one, can only be considered harmless on the showing made.

### D. Right Lateral Epicondylitis

The plaintiff next contends that the administrative law judge imposed a physical limitation in the RFC that she assigned to him to account for his lateral epicondylitis of the right elbow, which she found to be severe, by relying solely "upon her own medical assessment," an error that entitles him to remand. Itemized Statement at 9-10. Again, he argues that the administrative law judge was required to adopt the limitations found by Dr. Graf with respect to this impairment. *Id*. at 10. Specifically, he asserts that the administrative law judge did not adopt Dr. Graf's limitation to occasional reaching (apparently only with the right arm) and therefore was required "to send Mr. Ferrante out for a consultative examination or to hold a further hearing with a medical advisor." *Id*.

The administrative law judge did find that the plaintiff's lateral epicondylitis of the right elbow was severe, Record at 15, but she also found that a treating physician, Dr. Johnson, "felt that [the plaintiff's] right lateral epicondylitis was under control and that he should have no difficulty lifting, carrying or handling objects"; that a March 2007 test for lateral epicondylitis produced no pain; and that, in May 2007, he had normal range of motion and strength in both elbows. *Id*. at 21-22. "[Dr. Stockwell] concluded [in May 2007] that the claimant [had] abilities, despite his impairments, to lift, carry and handle objects . . . 'without functional deficit' based on manual muscle testing and range of motion assessment." *Id*. at 22. This discussion appears to be intended to support a finding that the epicondylitis[5] was *not* severe.

While this inconsistency might appear problematic at first blush, Dr. Graf, upon whose report the plaintiff relies to attack the administrative law judge's failure to include any limitations on reaching in her conclusion as to RFC, Itemized Statement at 10, does not tie the limitation to occasional reaching imposed by his report, Record at 606, to the epicondylitis.[6] He does not mention epicondylitis in the "Summary and Discussion" section of his written report, and his only reference to "right forearm pain" suggests that this pain is a function of the plaintiff's cervical spine impairment. *Id*. at 603. The only mention of epicondylitis in Dr. Graf's report and accompanying "Medical Source Statement" is one entry in a two-and-a-half-page list under the heading "Medical History": "5/27/03. Complaints of pain over the right lateral epicondyle and right buttock pain. Impression: lateral epicondylitis right elbow."

However, there is no way to know from the evidence presented whether that diagnosis would be permanent or whether the condition would have continued for at least 12 months. One

---

[5] Epicondylitis is inflammation of an epicondyle. *Stedman's Medical Dictionary* (27th ed. 2000) at 603. An epicondyle is a "projection from a long bone near the articular extremity above or upon the condyle." *Id*. A condyle is a "rounded articular surface at the extremity of a bone." *Id*. at 397.
[6] Dr. Graf does describe the source of the reaching limitation he imposed as "neck 'locks up' with looking overhead." Record at 606.

or the other would be necessary to allow the court or an administrative law judge somehow to infer that Dr. Graf must have based his reaching limitation on this impairment. It is the plaintiff's burden to demonstrate what limitations flow from his claimed impairments. He has not done so here.[7]

### E. Cashier II

The administrative law judge used the Grid only as a framework for decision-making. Record at 38, and, given her finding that the plaintiff's ability to perform the full range of light work was "impeded by additional limitations," *id.*, she was required either to consult a vocational expert or to demonstrate substantial support in the record for the proposition that the significant nonexertional impairment or impairments at issue only marginally reduce the occupational base. *E.g., MacFarlane v. Astrue*, No. 07-132-P-H, 2008 WL 660225 , at *2 (D. Me. Mar. 5, 2008) (and cases cited therein). Here, the administrative law judge relied on the testimony of a vocational expert, Record at 38, and there is nothing to suggest that she employed the alternate method. She discusses only one job identified by the vocational expert, that of cashier II, and the fact that she calls it "a representative sample" does not mean that the commissioner may now rely on other specific light jobs that may fit the terms of the administrative law judge's hypothetical question to the vocational expert eliciting testimony about this job.

The plaintiff first attacks this job because all light jobs require "standing up to six hours per day and lifting up to 20 pounds occasionally," which Dr. Graf's report does not support. Itemized Statement at 11. However, the administrative law judge found that the plaintiff could stand for a total of six hours in an eight-hour day and lift 20 pounds occasionally. Record at 32.

---

[7] The plaintiff also contends that the "combined impact of all the RFC errors" entitles him to remand. Itemized Statement at 11. I have found no such errors to this point in my analysis of his allegations of error, and thus find nothing to combine.

12

My discussion of the plaintiff's claims with respect to Dr. Graf's report applies here. No error in the administrative law judge's treatment of Dr. Graf's conclusions has been demonstrated.

The plaintiff's more serious challenge to any reliance on the job of cashier II is that the limitation found by the administrative law judge to routine, repetitive tasks, if it means the same as a limitation to simple instructions under Social Security law, makes the cashier II job unavailable to him because the Dictionary of Occupational Titles assigns the job a GED reasoning level of 3, which is not compatible with a limitation to simple instructions. Itemized Statement at 12-13. I have recently recommended that this court adopt the principle that a limitation to simple instructions is not incompatible with a GED reasoning level of 2. *Pepin v. Astrue*, Civil No. 09-464-P-S, 2010 U.S.Dist.LEXIS 98294, at *8-*16 (D. Me. Aug. 24, 2010), *aff'd* 2010 U.S.Dist.LEXIS 98353 (D.Me. Sept. 16, 2010).

The plaintiff asserts that, if a limitation to routine, repetitive tasks, which is included in the RFC in this case, means the same thing as a limitation to simple instructions in other cases, then the GED reasoning level of 3 assigned to the cashier II job by the Dictionary of Occupational Titles means that this job is not available for the plaintiff. If, on the other hand, the two terms do not mean the same thing, he contends, then this court must "withdraw its decision in *Prescott* [*v. Astrue*, Civil No. 09-23-B-W, 2009 WL 3148731 (D. Me. Sept. 30, 2009), *aff'd* Nov. 5, 2009 (Docket No. 18)] and find that a limitation to work limited to 'simple' instructions cannot be assessed under the Grid rules at any exertional level." Itemized Statement at 13.

I reject the plaintiff's invitation to "withdraw" or otherwise disavow the recommended decision in *Prescott*. That case is easily distinguishable from this case, however the court might rule on the issue presented.[8]

---

[8] For example, *Prescott* involved "an inability to understand, remember, and carry out detailed instructions," 2009 WL 3148731 at *1, not a limitation to simple instructions.

The vocational expert in this case based her testimony identifying the cashier II job in response to the administrative law judge's hypothetical question, at least in part, that she interpreted a limitation to routine, repetitive instructions[9] to refer to unskilled or low semi-skilled work rather than work at any particular GED reasoning level, and that she did not consider GED levels in responding to the question. Record at 92. Thus, for purposes of this case, the court must assume that the administrative law judge's reliance on the cashier II job has nothing to do with its assigned GED reasoning level, even though the vocational expert effectively testified that the job would be available to a person limited to jobs involving routine, repetitive instructions.

This case, therefore, should not be evaluated as if "routine, repetitive" instructions mean the same as "simple" instructions. It should rather be evaluated on its own terms. There is no need to consider whether a limitation to "simple" instructions implicates the GED reasoning level of 3. No "remand for clarification and more specific presentation to a [vocational expert]," Itemized Statement at 14, is necessary. The plaintiff does not contend that the vocational expert's explanation of the cashier II job as "unskilled or low semi-skilled" was wrong.

---

[9] The administrative law judge said "the individual is . . . limited to routine, repetitive instructions" in her hypothetical question to the vocational expert, Record at 82, and that the plaintiff is limited to the performance of routine, repetitive tasks" in her RFC. *Id*. at 32. I can only conclude that she found the two phrases to mean the same thing.

## II. Conclusion

For the foregoing reasons, the recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 19th day of October, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge